IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EDWARD FISHER, | ) | |
|     Petitioner, | ) | Civil Action No. 12-144 Erie |
| | ) | |
| v. | ) | District Judge Mark R. Hornak |
| | ) | Magistrate Judge Susan Paradise Baxter |
| MICHAEL HARLOW, et al., | ) | |
|     Respondents. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**I.    RECOMMENDATION**

It is respectfully recommended that the petition for a writ of habeas corpus filed by state prisoner Edward Fisher be denied and that a certificate of appealability be denied.

**II.    REPORT**

Before the Court is Fisher's petition for a writ of habeas corpus [ECF No. 1], which he has filed pursuant to 28 U.S.C. § 2254. He challenges the Pennsylvania Board of Probation and Parole's (the "Board's") decision to recommit him to a state correctional institution as a technical parole violator to serve 24 months of backtime. Specifically, he contends that the Board violated his procedural due process rights because his parole violation hearing[1] was not held within the time period proscribed by the Board's regulations. Those regulations, he asserts, required that his violation hearing be held within 120-days after the Board had received official verification of the final disposition of his outstanding criminal charges.

---

[1]    In Pennsylvania, the terms "revocation hearing" and "violation hearing" have specific meanings in the parole context. Tarrant v. Commonwealth, 521 A.2d 997, 998 n.5 (Pa.Commw.Ct. 1987). Technical parole violations are dealt with at a "violation hearing," while the determination of whether an individual is a convicted parole violator is dealt with at a "revocation hearing." Id. (citing 37 Pa.Code § 71.2 (which supplies the procedures for the Board's handling of technical parole violations) and § 71.4 (which supplies the procedures for when an individual is convicted of committing a new criminal offense when he was on parole (is a convicted parole violator)).

1

A.     **Relevant Background**

In 1987, Fisher, who was on parole at the time, stabbed and killed a man. He was arrested and charged with third-degree murder and possession of an instrument of crime. In February of 1989, he appeared before the Court of Common Pleas of Philadelphia County and pleaded guilty to both crimes. The court sentenced him to an aggregate term of 12 ½ to 25 years' imprisonment. The Board also recommitted him as a convicted parole violator to serve the remainder of his original sentence.

The Board released Fisher on parole again on July 30, 2007. He was subject to numerous conditions while on parole, including the requirements that he refrain from owning or possessing a weapon, refrain from entering establishments that sell or dispense alcohol, and abide by a curfew that required his presence in his approved residence between the hours of 8:00 p.m. and 6:30 a.m.

Around 11:30 p.m. on March 29, 2008, police responded to a report of a man, who was later identified as Fisher, armed with a knife inside a bar in Philadelphia. Fisher assaulted the responding officers. As a result of this incident, he was arrested and charged with aggravated assault, simple assault, harassment, resisting arrest, and disorderly conduct. The Board filed a parole violator warrant in which it cited Fisher for the new criminal charges and also for violation of technical parole conditions.

On April 2, 2008, the Board provided Fisher with a "Notice of Charges and Hearings." This document detailed his new criminal charges and set forth the multiple terms of his parole that he had been charged with violating. It also scheduled his preliminary hearing. [Resp's Ex. F, Attach. 5, ECF No. 11-2 at 14-15]. On the scheduled date for the preliminary hearing, which was April 8, 2008, Fisher signed a "Waiver of Preliminary Hearing/Detention." [Resp's Ex. F, Attach. 6, ECF No. 11-2 at 17]. On that same date, he also signed a form entitled "Request For Continuation of Hearing," in which he requested that his *violation* hearing be continued "[u]ntil further written notice (**To be rescheduled at**

**the request of the parolee**)." [Resp's Ex. F, Attach. 7, ECF No. 11-2 at 19 (emphasis added)]. The request was made in order "[t]o await disposition of all outstanding criminal charges." [Id.]

On April 22, 2008, the Board issued the following "Notice of Board Decision":

Detain pending disposition of criminal charges.
(arrested 3/29/2008 by Philadelphia police department.)

Schedule panel violation hearing.

Continue until further notice. **Advise in writing when you are prepared to proceed.**

[Resp's Ex. F, Attach. 8, ECF No. 11-2 at 21 (emphasis added)]. The Board's directions were in accordance with 37 Pa.Code § 71.5(c), which states:

> In determining the period for conducting hearings under this chapter, there shall be excluded from the period a delay in any state of the proceedings which is directly or indirectly attributable to one of the following:
> - - -
> (2) Continuances granted at the request of a parolee or counsel, in which case the Board is not required to reschedule the hearing until it receives a **written request to reschedule the hearing from the parolee or counsel**.

(Emphasis added).

On September 10, 2008, Fisher was convicted of the new criminal charges of simple assault, possession of an instrument of crime, and disorderly conduct. The Court of Common Pleas of Philadelphia County sentenced him to a term of five years of probation. [Resp's Ex. F, Attach. 9, ECF No. 11-2 at 23]. On September 17, 2008, he was remanded to the custody of the Pennsylvania Department of Corrections on the Board's warrant. [ECF No. 2, ¶ 7].

Pursuant to 37 Pa.Code § 71.4, which is the regulation that supplies the procedures for when an individual is convicted of committing a new criminal offense when he was on parole, the Board was required to conduct Fisher's parole *revocation* hearing in order to dispose of his charge that he was a

3

convicted parole violator "within 120 days from the date the Board received official verification of … the guilty verdict[.]" "Official verification" is defined in 37 Pa. Code § 61.1 as:

> Official verification – Actual receipt by a parolee's supervising parole agent of a direct written communication from a court in which a parolee was convicted of a new criminal charge attesting that the parolee was so convicted.

On September 22, 2008, the Board received the Order from the Court of Common Pleas of Philadelphia County in which it sentenced Fisher on his new criminal charges. [Resp's Ex. 9, ECF No. 11-2 at 23]. Therefore, September 22, 2008, is the date the Board received "official verification" of Fisher's guilty verdicts. [Resp's Ex. A, ECF No. 18-1 at 1].

Fisher's revocation hearing was not held until March 10, 2009, which was approximately 169 days after the Board had received official verification of his guilty verdicts. [Resp's Ex. G, ECF No. 19-1 at 2-57. Resp's Ex. A, ECF No. 18-1 at 1-7]. At that hearing, Fisher's privately-retained attorney, Holly Dobrosky, Esquire, objected to the timeliness of the revocation hearing because it was not held within the 120-day time limit set forth in § 71.4. The Hearing Examiner indicated that she agreed that the revocation hearing was untimely with respect to the charge that Fisher was a convicted parole violator. [Resp's Ex. G, ECF 19-1 at 51].

There was no discussion at the March 10, 2009, revocation hearing about the charges that Fisher faced for being a technical parole violator. His attorney did not mention those charges or lodge any objection challenging them. That is because the provisions of § 71.4 did not apply to the charges that Fisher faced for being a technical parole violator. The relevant regulation applicable to technical parole violation charges is 37 Pa.Code § 71.2. At subparagraph 10, it provides: "If a violation hearing is scheduled, it shall be held no later than 120 days after the preliminary hearing." 37 Pa.Code § 71.2(10). Since Fisher had waived his right to a preliminary hearing, the 120-day period did not apply. Jones v. Pennsylvania Bd. of Prob. and Parole, 953 A.2d 710, 713 (Pa.Commw.Ct. 2008). The Commonwealth

4

Court of Pennsylvania has held that in those cases in which no preliminary hearing is held, "the applicable standard is that the Board hold the violation hearing within a 'reasonable time after the parolee is taken into custody.'" Id. (quoting Morrissey v. Brewer, 408 U.S. 471, 488 (1972)). This "reasonable time" standard is mandated by the Due Process Clause of the Fourteenth Amendment, as explained by the Supreme Court in Morrissey. In that case, the Supreme Court held that the Due Process Clause applies to the revocation of parole. However, the Supreme Court also recognized that individuals in parole revocation proceedings are not entitled to "the full panoply of rights" that are accorded in a criminal prosecution. Morrissey, 408 U.S. at 480 (citing Mempa v. Rhay, 389 U.S. 128 (1967)). Rather, given that the state has an "overwhelming" interest in being able to return parole violators to prison "without the burden of a new adversary criminal trial," the Due Process Clause, in this regard, requires merely that an "informal hearing" be held "to assure that the finding of a parole violation will be based on verified facts and that the exercise of discretion will be informed by an accurate knowledge of the parolee's behavior." Id. at 483-84. The Supreme Court delineated the "minimum requirements of due process" that must be afforded in such situations. The only one that is relevant in this case is the requirement that a parole recommitment hearing "be tendered within a reasonable time after the parolee is taken into custody." Id. at 488.

On April 29, 2009, the Board issued its decision to take no further action with regard to the charge that Fisher was a convicted parole violator. It also ordered that a violation hearing be scheduled to address the charges that he was a technical parole violator. [Resp's Ex. B, ECF No. 18-1 at 8].

Fisher's violation hearing was scheduled for May 13, 2009. On that date, he waived his right to counsel and executed a "Waiver of Violation Hearing and Admission Form." Therein, he acknowledged that he was advised of his constitutional right to a violation hearing, and that "[w]ith full knowledge and understanding of my constitutional right to a . . . violation hearing, I hereby waive that right. I waive this

5

right of my own free will, without promise, threat or coercion." Fisher admitted that he violated three conditions of his parole (he possessed a knife, he was in a bar, and he was outside beyond his curfew). [Resp's Ex. F, Attach. 10, ECF No. 11-2 at 26-27].

On August 27, 2009, the Board issued its decision to recommit Fisher as a technical parole violator to serve 24 months of backtime. [Resp's Ex. F, Attach. 11, ECF No. 11-2 at 29]. Fisher filed an administrative appeal of that decision [Resp's Ex. F, Attach. 12, ECF No. 11-2 at 32-35], which the Board denied [Resp's Ex. F, Attach. 13, ECF No. 11-2 at 37].

Fisher filed a *pro se* appeal of the Board's decision with the Commonwealth Court. He argued that his violation hearing was untimely for the same reason that his revocation hearing was untimely, that is, that it was not held within 120 days after the Board had received official verification of his guilty verdicts. He also cited to Morrissey and contended that his procedural due process rights had been violated because his violation hearing had not been held within a reasonable time, specifically, within the 120-day time limit he believed applied to him under state law. [Resp's Ex. B, ECF No. 11-1 at 8-13].

The Commonwealth Court appointed Assistant Public Defender Nicole Sloane, Esquire, to represent Fisher. On June 10, 2010, she moved for leave to withdraw and filed a no-merit letter in accordance with Commonwealth v. Turner, 544 A.2d 927 (Pa. 1988). [Resp's Ex. C , ECF No. 11-1 at 24-30].

On December 30, 2010, the Commonwealth Court issued a Memorandum Opinion in which it granted Attorney Sloane's request for leave to withdraw and affirmed the Board's order recommitting Fisher as a technical parole violator. It held:

> The Board's regulations set forth the procedures and timelines applicable to preliminary and violation hearings. These regulations direct that a preliminary hearing be held within fourteen days of the detention of a parolee on a Board warrant. 37 Pa.Code § 71.2(3). **If a violation hearing is scheduled, the hearing must be held within 120 days of the preliminary hearing. 37 Pa.Code § 71.2(10). However, the Board's**

6

> **regulations do not specify a time limitation for a violation hearing if no preliminary hearing is required or held. We have recently held that, in such cases, the Board is required to hold a violation hearing within a reasonable time after the parolee is taken into custody.** <u>Butler v. Pennsylvania Board of Probation and Parole</u>, 989 A.2d 936 (Pa. Cmwlth.)., <u>appeal denied</u>, __ Pa. __, 997 A.2d 1180 (2010).
>
> In the present case, Fisher waived his right to a preliminary hearing and simultaneously filed a request for a continuance of his violation hearing pending final disposition of his outstanding criminal charges. As Counsel points out in her <u>Turner</u> letter, **this Court has previously held that when a parolee requests a continuance, the 120-day period does not being to run again until the parolee requests in writing that the parole hearing be rescheduled.** <u>Stevens v. Pennsylvania Board of Probation and Parole</u>, 538 A.2d 108 (Pa. Cmwlth. 1988). **This holding applies equally to an analysis under the reasonable time standard.**
>
> **Subsequent to his continuance request, Fisher never requested in writing that the Board schedule a violation hearing. Instead, on May 13, 2009, Fisher voluntarily waived his right to a violation hearing and admitted to all three of the alleged technical parole violations.** Thus, we agree with Counsel that Fisher's claim regarding an untimely parole violation hearing is without merit.

[Resp's Ex. D, ECF No. 11-1 at 37-38 (emphasis added) (footnote omitted)].

Fisher filed a petition for allowance of appeal with the Supreme Court of Pennsylvania [Resp's Ex. E, ECF No. 11-1 at 42-55], which was denied in a per curiam order on July 12, 2011 [Resp's Ex. F, ECF No. 11-1 at 55-56].

Having had no success before the state court, Fisher now seeks federal habeas relief in this Court. Pursuant to the federal habeas statute applicable to state prisoners, 28 U.S.C. § 2254, Fisher must demonstrate that he is in custody in violation of the Constitution of the United States. He argues that the Board violated its own regulations when it failed to conduct his violation hearing within the 120-day time period he claims applied to him, and that this error also amounted to a violation of his due process rights. He asserts that because his violation hearing was untimely, the Board lacked jurisdiction to issue its decision to recommit him as a technical parole violator. As relief, he seeks an order from this Court

directing Respondent to release him from custody. [See petition, ECF No. 1, and brief in support, ECF Nos. 2 & 3].

Respondents filed an answer [ECF No. 11], to which Fisher filed a reply [ECF No. 15. See also ECF No. 20]. Respondents also have filed the relevant state court record. [ECF Nos. 11, 18 & 19]

**B.    Discussion**

    **1.    State Law Claim**

Fisher's claim that he is entitled to federal habeas relief because the Board held his parole *violation* hearing outside of the time limit provided by the Board's regulations must be denied. This claim is one of state law error, which is not cognizable in federal habeas. As set forth above, this Court is limited to deciding whether Fisher's state confinement is violative of the Constitution of the United States, 28 U.S.C. § 2254(a), and may not rule on issues of purely state-law error. See, e.g., Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); In re Brown, 382 F.App'x 150, 151 n.1 (3d Cir. 2010) ("To the extent that Brown is claiming a violation of 37 Pa.Code § 71.4, a claim based on an erroneous application of state law is not cognizable in federal court."). Moreover, the Commonwealth Court expressly held that there was no violation of state law and "[f]ederal courts reviewing habeas claims cannot 'reexamine state court determinations on state-law questions.'" Priester v. Vaughn, 382 F.3d 394, 402 (3d Cir. 2004) (quoting Estelle, 502 U.S. at 68).

Although this Court has no authority to review the Commonwealth Court's resolution of a state law question and could not grant habeas relief to Fisher even if he established that the Commonwealth Court erred in its application of state law, it is worth noting that it does not appear to this Court that Fisher's claim of error has any merit. He insists that because the Board failed to hold his parole *revocation* hearing within the 120-day time period set forth in 37 Pa.Code § 71.4 that that also means his

8

*violation* hearing was untimely. However, as set forth above, § 71.4 does not apply to charges that an individual is a technical parole violator and it does not govern when a violation hearing must be held. With respect to determining when the violation hearing had to be held in Fisher's case, the triggering date for the Board **was not** the date upon which it received official verification of his guilty verdicts, as it was with respect to his *revocation* hearing. Rather, the triggering date was the date that Fisher advised the Board in writing that he was prepared to proceed. That is what is required by § 71.5(c)(2) and also what the Board expressly instructed Fisher when he waived his right to a preliminary hearing and moved to continue his violation hearing. [Resp's Ex. F. Attach. 7, ECF No. 11-2 at 19 (the violation hearing would be continued "[u]ntil further written notice (**To be rescheduled at the request of the parolee**) (emphasis added); Resp's Ex. F., Attach. 8, ECF No. 11-2 at 21 (violation hearing would be continued "until further notice[,]" and requiring that Fisher: "**Advise in writing when you are prepared to proceed.**" (emphasis added)].

Fisher insists that the Commonwealth Court's decision in his case is inconsistent with its earlier decisions. He cites to Taylor v. Pennsylvania Board of Probation and Parole, 624 A.2d 225 (Pa.Commw.Ct. 1993) and Mack v. Pennsylvania Board of Probation and Parole, 654 A.2d 129 (Pa.Commw.Ct. 1995), but in those cases the Commonwealth Court was evaluating the timeliness of a parole *revocation* hearing under § 71.4, and, they therefore, are not relevant to whether the *violation* hearing was untimely. Fisher also cites to Tarrant v. Pennsylvania Board of Probation and Parole, 521 A.2d 997 (Pa.Commw.Ct. 1987) and Robinson v. Pennsylvania Board of Probation and Parole, 503 A.2d 1048 (Pa.Commw.Ct. 1986) in support of his contention that the triggering date for determining the timeliness of his violation hearing was the date the Board received official verification of his guilty

9

verdicts.[2] However, the parolees in those cases were not expressly advised, as Fisher was in this case, that his violation hearing would be rescheduled only after he made a request in writing. Moreover, in 1988 after those cases were decided, the Board's regulations were amended. Section 71.5 now expressly states that if a continuance is "granted at the request of a parolee or counsel, … the Board is not required to reschedule the hearing **until it receives a written request to reschedule the hearing from the parolee or counsel**." 37 Pa.Code § 71.5(c)(2) (emphasis added). The regulations in effect at the time of Tarrant and Robinson did not contain a similar provision. See 37 Pa.Code § 71.5 (effective Sept. 18, 1982 to Jan. 15, 1988).

In any event, the only claim that this Court can review is Fisher's contention that the Board violated the federal constitutional rights afforded to him by the Due Process Clause by failing to conduct a violation hearing within a reasonable time, as required by Morrissey.

### 2. Due Process Claim

Because the Superior Court denied Fisher's due process claim on the merits, this Court's analysis of it is governed by AEDPA's standard of review. AEDPA "imposes a highly deferential standard for reviewing claims of legal error by state courts[.]" Burt v. Titlow, — U.S. — , 134 S.Ct. 10, 15 (2013). It provides, in relevant part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

---

[2] Fisher also relies upon Wiley v. Pennsylvania Board of Probation and Parole, 467 A.2d 100 (Pa.Commw.Ct. 1983). That case is distinguishable from Fisher's and, therefore, is not supportive of his argument that his violation hearing was untimely. In Wiley, the petitioner had a preliminary hearing. He argued that his violation hearing was untimely because was not held within 120-days of that preliminary hearing. The Commonwealth Court agreed with him. In this case, Fisher did not have a preliminary hearing and, therefore, the requirement that the violation hearing be held within 120 days of the preliminary hearing did not apply to him.

> (1) resulted in a decision that was **contrary to**, or involved an **unreasonable application of**, clearly established Federal law, **as determined by the Supreme Court of the United States**[.]

28 U.S.C. § 2254 (emphasis added).

The Third Circuit Court has explained:

> The test for § 2254(d)(1)'s "contrary to" clause is whether the state court decision "applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of [the Supreme] Court but reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005) (citing Williams v. Taylor, 529 U.S. 362, 405 (2000), and Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)). Of course, a state court's resolution of a question that the Supreme Court has not resolved can be neither contrary to, nor an unreasonable application of, the Court's precedent. See Kane v. Garcia Espitia, 546 U.S. 9 (2005).

Rountree v. Balicki, 640 F.3d 530, 537 (3d Cir. 2011) (bracketed text in original) (parallel citations omitted).

In evaluating Fisher's due process claim, the Commonwealth Court cited to Butler v. Pennsylvania Board of Probation and Parole, 989 A.2d 936, 940 (Pa.Commw.Ct. 2010), which cited to its earlier decision in Jones v. Pennsylvania Board of Probation and Parole, 952 A.2d 710, 712-13 (Pa.Commw.Ct. 2008). In Jones, the Commonwealth Court explained that when 37 Pa.Code § 71.2(10) does not apply to a parole violator detainee's circumstance, his violation hearing must be held within a "reasonable time" after he is taking into custody as required by Morrissey. Since the Commonwealth Court applied the correct legal standard when it evaluated Fisher's due process claim, its adjudication withstands review under the "contrary to" clause of § 2254(d)(1). Williams, 529 U.S. at 406 ("a run-of-the mill state-court decision applying the correct legal rule from [Supreme Court] cases [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause.").

The only remaining question for this Court is whether the Commonwealth Court's adjudication of Fisher's due process claim was an "unreasonable application of" Morrissey. 28 U.S.C. § 2254(d). The

11

Supreme Court has stressed the "highly deferential" review that this Court must accord the state court's decision in conducting its analysis:

> We have explained that "an unreasonable application of federal law is different from an incorrect application of federal law." Williams v. Taylor, 529 U.S. 362, 410, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). Indeed, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id., at 411, 120 S.Ct. 1495. Rather, that application must be "objectively unreasonable." Id., at 409, 120 S.Ct. 1495. This distinction creates "a substantially higher threshold" for obtaining relief than *de novo* review. Schriro v. Landrigan, 550 U.S. 465, 473, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007). AEDPA thus imposes a "highly deferential standard for evaluating state-court rulings," Lindh v. Murphy, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and "demands that state-court decisions be given the benefit of the doubt," Woodford v. Visciotti, 537 U.S. 19, 24, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002) (per curiam).

Renico v. Lett, 559 U.S. 766, 773 (2010). See also Harrington v. Richter, — U.S. —, 131 S.Ct. 770, 786 (2011) ("If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings…. It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther."). The Supreme Court emphasized that same theme in its recent decision, Burt v. Titlow:

> AEDPA recognizes a foundational principle of our federal system: State courts are adequate forums for the vindication of federal rights. "[T]he States possess sovereignty concurrent with that of the Federal Government, subject only to limitations imposed by the Supremacy Clause. Under this system of dual sovereignty, we have consistently held that state courts have inherent authority, and are thus presumptively competent, to adjudicate claims arising under the laws of the United States." Tafflin v. Levitt, 493 U.S. 455, 458, 110 S.Ct. 792, 107 L.Ed.2d 887 (1990). This principle applies to claimed violations of constitutional, as well as statutory, rights. See Trainor v. Hernandez, 431 U.S. 434, 443, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977). Indeed, "state courts have the solemn responsibility equally with the federal courts to safeguard constitutional rights," and this Court has refused to sanction any decision that would "reflec[t] negatively upon [a] state court's ability to do so." Ibid. (internal quotation marks omitted)….

12

> Recognizing the duty and ability of our state-court colleagues to adjudicate claims of constitutional wrong, AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court. AEDPA requires "a state prisoner [to] show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error ... beyond any possibility for fairminded disagreement." Harrington v. Richter, 562 U.S. —, — 131 S.Ct. 770, 786-787, 178 L.Ed.2d 624 (2011). "If this standard is difficult to meet" – and it is – "that is because it was meant to be." Id., at —, 131 S.Ct., at 786. We will not lightly conclude that a State's criminal justice system has experienced the "extreme malfunctio[n]" for which federal habeas relief is the remedy. Id., at —, 131 S.Ct., at 786 (internal quotation marks omitted).

Burt, 134 S.Ct. at 15-16.

The Commonwealth Court determined that Fisher's due process rights were not violated because: (1) subsequent to his continuance request, he did not request in writing that the Board schedule a violation hearing; and, (2) on May 13, 2009, he voluntarily waived his right to a violation hearing and admitted to all three of the alleged technical parole violations. Fisher insists that he cannot waive his right to challenge the timeliness of his violation hearing, but he has not directed this Court to any decision by the Supreme Court to support that contention. He simply has not demonstrated that the Commonwealth Court's decision that his due process rights were not violated because he failed to notify the Board in writing to reschedule his violation hearing and also because he voluntarily waived his right to a violation hearing was an "unreasonable application clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

Based upon all of the foregoing, Fisher's due process claim must be denied.

### C.     **Certificate of Appealability**

AEDPA codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. 28 U.S.C. § 2253 provides that "[a] certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a

13

constitutional right." When the district court has rejected a constitutional claim on its merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Applying that standard here, jurists of reason would not find it debatable whether the petition should be denied. Accordingly, a certificate of appealability should be denied.

### III. CONCLUSION

For the foregoing reasons, it is respectfully that recommended that the petition for a writ of habeas corpus be denied and that a certificate of appealability be denied.

Pursuant to the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Civil Rules, Fisher must seek review by the district court by filing objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Failure to do so will waive the right to appeal. Brightwell v. Lehman, 637 F.3d 187, 193 n.7 (3d Cir. 2011).

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated: January 6, 2014

cc: The Honorable Mark R. Hornak
United States District Judge